[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15148
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cr-00022-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD GARRETTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 14, 2018)

Before MARTIN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Donald Garrette appeals his conviction for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Specifically, Garrette challenges the district court's denial of his motion to suppress evidence found pursuant to a car search, including a firearm and ammunition. After review,[1] we affirm.

The question is whether Deputy Smith had reason to suspect Garrette, the occupant of the car he stopped, was involved in criminal activity.[2] In answering this question we must consider the "totality of the circumstances" and determine for ourselves whether Deputy Smith had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation omitted). Reliance on a hunch cannot justify a stop; however, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274.

---

[1] We apply a mixed standard of review to the district court's rulings on a motion to suppress, accepting the district court's factual findings as true unless they are clearly erroneous and reviewing de novo the district court's application of the law to those facts. *United States v. Ramirez*, 476 F.3d 1231, 1235-36 (11th Cir. 2007).

[2] As an alternative ground for denying suppression, the district court concluded Garrette had not been "seized" within the meaning of the Fourth Amendment during the initial stop. The district court noted that, rather than submitting to Deputy Smith's show of authority, Garrette paused only a moment before pulling away as Deputy Smith approached his vehicle on foot. *See Brendlin v. California*, 551 U.S. 249, 254 (2007) (noting that without actual submission to police authority, there is no seizure). We need not address this alternative ground because, assuming arguendo that Garrette had been "seized" within the meaning of the Fourth Amendment during the initial stop, we agree with the district court that Deputy Smith had reason to suspect Garrette was involved in criminal activity.

The district court concluded the totality of the circumstances known to Deputy Smith when he initially pulled Garrette over provided a particularized and objective basis for believing Garrette was violating § 320.261, Florida Statutes, which makes it a second degree misdemeanor to knowingly attach a license plate to a vehicle to which that plate is not lawfully assigned. Garrette was driving a Ford Explorer with an orange transporter license plate. Transporter license plates may be authorized to "any applicant who, incidental to the conduct of his or her business, engages in the transporting of motor vehicles which are not currently registered to any owner and which do not have license plates," and are only valid for use "on any motor vehicle in the possession of the transporter while the motor vehicle is being transported in the course of the transporter's business." § 320.133(1), Fla. Stat.

Deputy Smith suspected misuse of the transporter tag based on the totality of several circumstances. First, Deputy Smith had knowledge that the residential area where the stop occurred was a high crime area known for vehicle thefts. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that "the fact that [a] stop occurred in a 'high crime area' [is] among the relevant contextual considerations" in a Fourth Amendment analysis). Second, when Deputy Smith ran the license plate number on his in-car computer, the search revealed it was registered to a local automotive detailing business called Willie G's. He suspected the transporter plate

3

was not being validly used in the course of the transporter's business because Willie G's was not located in the residential neighborhood where Deputy Smith encountered the Explorer and it was improbable that a local automotive detailing business would be transporting a motor vehicle in the course of its business after midnight on a weekend night (indeed, the only open business in the area at the time of the stop was a bar).  Finally, in his year of patrolling, Deputy Smith had never seen a transporter license used in the area.  Considered together, these circumstances support the conclusion that Deputy Smith had a particularized, objective basis for suspecting that Garrette was committing a second-degree misdemeanor.[3]  Thus, the initial stop was lawful.

As Deputy Smith made his way over to the stopped vehicle, Garrette pulled back onto the road and drove away at approximately ten miles per hour. Deputy Smith returned to his patrol car, activated its emergency lights and sirens, and followed behind the Explorer, which drove forward for about a minute, its taillights illuminating sporadically, until it pulled into a residential driveway and parked.  Because the initial stop was lawful, Garrette's continual driving gave

---

[3] Garrette asserts Deputy Smith could not have had reasonable suspicion to suspect a violation of § 320.261 because Deputy Smith did not see Garrette attach the transporter license plate to the vehicle. The case Garrette cites for this proposition is, however, inapplicable.  In *Weaver v. State*, 233 So. 3d 501 (Fla. 2d DCA 2017), a Florida appellate court invalidated a warrantless arrest for a misdemeanor tag violation because the officer did not observe the defendant committing the offense.  But this case concerns reasonable suspicion, not probable cause.  *See Arvizu*, 534 U.S. at 274 (noting that, for purposes of a reasonable suspicion analysis, "the likelihood of criminal activity need not rise to the level required for probable cause.").

Deputy Smith probable cause to arrest him for fleeing or eluding a police officer in violation of § 316.1935(1), Florida Statutes, which makes it a felony for a driver, after stopping his vehicle in response to a law enforcement directive, to willfully flee in an attempt to elude the officer.  Garrette contends his alleged fleeing and eluding cannot be used against him because the initial stop was unlawful.  As explained above, we disagree with Garrette's premise that the initial stop was unlawful.  Accordingly, we reject the argument that his continual driving could not have provided probable cause to arrest him for fleeing or eluding a police officer in violation of § 316.1935(1), Florida Statutes.

We agree with the district court that the initial stop of Garrette's vehicle was lawful and, therefore, affirm its decision to deny Garrette's motion to suppress.

**AFFIRMED.**